JAMES M. BENSON *v.* STATE OF MISSISSIPPI.

1. WITNESSES.  *Impeachment.  General reputation for truth.  Proper inquiry.*

   Where a witness is sought to be impeached as unworthy of belief, the inquiry should be whether he is a person whose statement of a fact, in itself considered, is worthy of belief because of his reputation for veracity, and not whether he should be believed because of facts shown by other evidence; and the opposite party should not be allowed to examine the impeaching witness touching the effect of such facts.

2. SAME.  *Interest.  Opinion of impeaching witness.*

   Where an impeaching witness has testified that the general reputation for truth and veracity of the witness sought to be impeached is bad, it is improper to permit him to testify that he would be more likely to believe a person in whom he had no confidence than he otherwise would be, if such person were shown to be wholly disinterested in the subject-matter of the suit.

FROM the circuit court of Franklin county.

HON. JEFFERSON TRULY, Judge.

Appellant, Benson, was indicted at the April, 1900, term of the circuit court of Franklin county, on the charge of burglary, breaking into the courthouse at Meadville and taking $4,000 from the safe of the county treasury.  The evidence in the case shows that appellant was at the time of the burglary, and had been for a number of years prior, engaged in the business of repairing stoves, and that it was his custom to travel through the country in a buggy, taking with him certain tools, among which were a brace and bit, used for the purpose of drilling holes through iron, a cold chisel, and some other tools.  The evidence further shows that Benson was a stranger in the county, and that he arrived at Meadville on the morning of April 2, 1900, and that the burglary took place that night.  Some tools were found on the morning after the robbery—among them being a brace and bit, an old lantern with some cloth over it,

and some other tools—but they were not identified as those of Benson. At the trial of the case in the court below, Albert Bunkley, a white man, and Alex Weathersby, a negro, both of whom were convicts, testified that they had seen Benson about the courthouse or jail several days before the robbery; that they saw him on the night of the robbery from the cell, upstairs, of the jail. Bunkley testified that he thought that one of the men he saw at the courthouse that night was Benson. Havard, a witness for the state, testified that he had known Bunkley since he was a boy, and that his reputation for truth and veracity was bad. In re-examining Havard, the district-attorney asked him the following questions: "Q. If you knew he was in a position to see a thing that he has been testifying about, and was corroborated by other witnesses, would you believe him?" To this the witness made answer: "A. There has been a time when I would not hardly believe him, but I reckon I would have to believe him under those circumstances." The district-attorney then asked: "Q. Would you not be more likely to believe any man that you did not have any confidence in, if he was testifying about a matter that he had no interest in?" To this the witness made answer: "A. Under some circumstances I would, and some I would not. He might have some interest, and we might not know it." The district-attorney then asked: "Q. Presuming he had no interest in it, a man would be more likely to tell the truth than in a matter in which he was interested?" To this the witness made answer: "A. Yes, sir; I think so." To these questions defendant objected, his objections were overruled, and he excepted. The trial resulted in the conviction of defendant, and he was sentenced to the state penitentiary for a term of five years. From this judgment of the court, defendant appealed to the supreme court.

*J. A. Ramsey* and *Brame & Brame,* for appellant.

The court below erred in its rulings on the admission of evidence relating to the impeachment of the state witness, Bunkley.

*Rudsdill* v. *Singerland,* 18 Minn., 380 (Gil. 342); *Moulton* v. *State,* 88 Ala., 116 (6 So. Rep., 758; 6 L. R. A., 301); *Kennedy* v. *Upshaw,* 64 Tex., 411; *Teese* v. *Huntington,* 23 How., 2; 16 L. Ed., 479; 5 Rose's Notes, U. S. Rep., p. 960.

*McClurg,* attorney-general, for appellee.
(The attorney-general's brief is lost from the record.)

Argued orally by *L. Brame,* for appellant, and by *Monroe McClurg,* attorney-general, for appellee.

Whitfield, C. J., delivered the opinion of the court.

The court erred in permitting the witness Havard to answer the questions propounded to him on cross-examination as to whether he would believe Bunkley if he had been in a position to see, or if he was not interested. The very answer made shows clearly the impropriety of the question. The witness answered: "There has been a time when I would not hardly believe him, but I reckon I would have to believe him under those circumstances." The defendant was endeavoring to impeach Bunkley as unworthy of belief, by showing him to be a man whose reputation for veracity was bad. The inquiry was addressed to the end of ascertaining whether he was a man whose statement as to a fact was worthy of belief, in itself considered—whether his statement was worthy of belief because of his truthful character, not because conclusive facts shown by other evidence showed his statement might be true, as that the defendant could have been seen from the position in which Bunkley said he stood. The jury might in a particular case have certain circumstances proven conclusive that a particular fact might be as stated, so that they would believe that particular fact to be established, and yet wholly disbelieve the witness' statement that he knew of the fact. They would find the existence of the fact in such case from the irrefragable circumstances shown, although they might be thoroughly satisfied that the witness' statement that he knew

of the fact was wholly false, and that the statement of the witness was therefore unworthy of belief. It is perfectly obvious, therefore, that when the object of the investigation is to ascertain whether the witness' character for veracity is such that he could not be believed, and that the defendant could not be convicted if his statement was the only evidence of guilt, it is not permissible to bolster up the witness' general reputation for veracity by showing that such reputation is good, because, from the other facts independently proven, the fact he spoke to might have been as he stated it. That fact might in truth be as he stated it, and yet his statement that he knew it to be so, a lie; and whether his statement that he did know it was believable, judging from his reputation, would not at all be dependent on the fact being as he stated it to be; in the last analysis, under this line of inquiry, the jury would be authorized to believe the witness' statement that he knew the fact to be so, not because the statement was true, as being the truthful statement of a fact within the knowledge of the witness, but because there were other facts, shown by other testimony, showing the particular fact might be as the witness testified. But obviously, in such case, that fact might be as stated, and yet the witness' statement that he knew it to be so, a lie, and hence be unworthy of belief. And the thing being inquired about was whether he was a truthful witness. The same observations apply to the question as to interest. Undoubtedly, any man is more likely to be believed where he is not interested. That is true of the most truthful witness. But the fact that he is interested in a particular case would not show that he always told the truth where he was not interested. A witness' reputation for veracity might be so bad that he would not be believed, interested or disinterested. And it is that general reputation which was here being inquired about. The plain effect of the course pursued here was to make the jury believe the witness' statement because the witness Havard said that, in his opinion, the witness' statement ought to be believed—not because he told the truth,

but because the fact might have been as he stated it if he had been in a position to know it. Because he might have seen the defendant from the place where he said he saw him, therefore he did see him, since he said he did, is the logic—a perfect *non sequitur*. Whether in fact he did see him depended on the truthfulness of his statement. Whether he was truthful was the inquiry. It was the jury's opinion as to whether he was believable, not that of the witness, that was called for, and the reasons above set forth show that the jury were given a wrong standard. As the conviction here rested materially on Bunkley's testimony, it cannot be confidently said that the result would not have been different with this testimony excluded. See authorities in brief of learned counsel for appellant.

*Reversed and remanded.*